IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2-09-cv-04220-NKL |
| ) | |
| DENNIS CRANE, ROBERT STERNER, ) | |
| CHRIS KOSTER, and ) | |
| JAMES KEATHLEY ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Before the Court is Plaintiff John Doe's Motion for Attorney Fees [Doc. # 46]. For the following reasons, the Court GRANTS the motion.

**I.    Background**

On October 23, 2009, Doe filed a Complaint challenging the constitutionality of Mo. Rev. Stat. § 589.426 on various grounds. Doe brought this action against the following parties: Dennis Crane, in his official capacity as Sheriff of Callaway County; Robert Sterner, in his official capacity as prosecuting attorney of Callaway County; Chris Koster, in his official capacity as Attorney General of the State of Missouri; and James Keathley, in his official capacity as Superintendent of the Missouri Highway Patrol.[1]

---

[1] Defendant Keathley was named in this lawsuit in his official capacity as Superintendent of the Missouri State Highway Patrol. Effective March 1, 2010, Col. Ronald K. Repogle became the current Superintendent of the Missouri State Highway Patrol.

Section 589.426, titled "Registered sexual offender, Halloween-related activities," provides:

> 1. Any person required to register as a sexual offender under sections 589.400 to 589.425 shall be required on October thirty-first of each year to:
>
> (1) Avoid all Halloween-related contact with children;
>
> (2) Remain inside his or her residence between the hours of 5 p.m. and 10:30 p.m. unless required to be elsewhere for just cause, including but not limited to employment or medical emergencies;
>
> (3) Post a sign at his or her residence stating, "No candy or treats at this residence"; and
>
> (4) Leave all outside residential lighting off during the evening hours after 5 p.m.
>
> 2. Any person required to register as a sexual offender under sections 589.400 to 589.425 who violates the provisions of subsection 1 of this section shall be guilty of a class A misdemeanor.

Mo. Rev. Stat. § 589.426. Section 589.426 became effective on August 28, 2008.

Plaintiff Doe is required to register in Missouri as a sex offender. His conviction was entered prior to August 28, 2008. Doe's Complaint alleged that § 589.426 violated the Constitution of the United States and its Amendments in various ways (Counts I-IV) as well as the Missouri Constitution's prohibition against retrospective laws (Count V). [Doc. # 1 at 5-6.] Doe sought relief in the form of a declaratory judgment that § 589.426 was unconstitutional, a temporary restraining order ("TRO"), a permanent injunction, and attorney fees and costs. *Id.* at 7.

When Doe filed his Complaint, the matter of *State of Missouri v. Raynor*, Appeal No. SC 90164 (Mo.), was pending before the Supreme Court of Missouri. That case concerned

whether § 589.426 could be applied to persons who, like Doe, were required to register in Missouri as sex offenders based on convictions entered prior to the August 28, 2008, effective date of § 589.426. On October 30, 2009, this Court (1) stayed the matter under the *Pullman* abstention doctrine pending resolution of *Raynor* by the Supreme Court of Missouri and (2) granted Doe's Motion for a Temporary Restraining Order. [Doc. # 22.]

On January 12, 2010, the Supreme Court of Missouri decided *Raynor*, in combination with another case, under the name *F.R. v. St. Charles County Sheriff's Department*, 301 S.W.3d 56 (Mo. 2010) (en banc). The *F.R.* court tailored its opinion to address the facts of Raynor's case, rather than making broad pronouncements regarding § 589.426. *Id.* at 61. The *F.R.* court noted that the Missouri Constitution prohibits a law that is "retrospective in its operation" – i.e., a law that "creates a new obligation, imposes a new duty, or attaches a new disability with respect to transactions or considerations already past." *Id.* (citation omitted). Such transactions include convictions. *Id.* The *F.R.* court stated, "a subsequent law that requires a sex offender to do something – with a criminal penalty for not doing what the new law requires – is the imposition of a new obligation or duty imposed solely as a result of the pre-[§ 589.426] conviction." *Id.* at 62. "[W]hen Raynor was convicted in 1990, there was no law requiring him to put up a sign and forbidding him from going outdoors, turning on outdoor lights or handing out candy on Halloween." *Id.* at 61. The *F.R.* court emphasized that the sole reason for imposing the obligations of § 589.426 on Raynor was his prior sex offense conviction. *Id.* at 63-64. "Because Raynor was convicted and sentenced before R.S.Mo. § 589.426 was enacted," the *F.R.* court held that applying the statute to

3

Raynor would constitute a retrospective application of § 589.426 in violation of article I, section 13, of the Missouri Constitution. *Id.* at 66.

In the wake of *F.R.*, Defendants Keathley and Koster moved for this Court to dismiss Doe's case. On May 28, 2010, the Court granted that motion, dismissing all remaining issues as moot:

> While *F.R.* addressed an as-applied challenge, its language indicates that its holding extends to those whose prosecutions under R.S.Mo. § 589.426 would be based on convictions which occurred prior to August 28, 2008. . . . As the Moving Defendants admit, there is no basis for distinguishing Doe's case from Raynor's when it comes to application of R.S.Mo. § 589.426, and the statute cannot legally be applied to Doe. . . . Although Defendants would not make such a concession when the Court was considering the temporary restraining order in this case, after *F.R.* and at oral argument on the motion to dismiss, all Defendants confirmed that they will not seek to prosecute or enforce R.S.Mo. § 589.426 as to Doe based on his conviction from before August 28, 2008. Doe's claims are now moot and for that reason Defendants' Motion to Dismiss is granted as to all remaining issues before the Court.

[Doc. # 39 at 6.]

## II. Discussion

The federal civil rights attorney fees statute provides, in relevant part: "In any action or proceeding to enforce a provision of section . . . 1983 . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988(b) (1976). Rule 54 authorizes an award of costs, other than attorney fees, also to the "prevailing party." Fed. R. Civ. P. 54(d)(1).

### A. Whether Plaintiff Doe is the Prevailing Party in this Case

Plaintiff Doe claims that he is the prevailing party and, therefore, entitled to attorney fees and costs. Defendants Koster and Keathley argue that Plaintiff Doe is not entitled to attorney fees or costs because he is not a prevailing party. The only contested issue before the Court is whether Doe is a prevailing party.

"The touchstone of the prevailing party inquiry," the Supreme Court has recently affirmed, is "the material alteration of the legal relationship of the parties . . . ." *Sole v. Wyner*, 551 U.S. 74, 82 (2007) (quoting *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 792-93 (1989)). Beyond this core principle, the Supreme Court's precedents relating to the interpretation of the term "prevailing party" are not entirely clear. On the one hand, a "prevailing party [is] one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation." *Garland*, 489 U.S. at 791. On the other hand, in the context of the fee-shifting provisions of the Fair Housing Amendments Act and the Americans with Disabilities Act, the Supreme Court held that the term "prevailing party" does not "includ[e] a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon Board & Care Home, Inc. v. W. Va. Dep't of Health and Human Resources*, 532 U.S. 598, 600 (2001).

Most recently, in *Sole*, the Supreme Court was presented with facts somewhat similar to those here. There, the organizer of a Valentine's Day 2003 nude anti-war protest brought a § 1983 claim against state officials threatening to enforce Florida's prohibition on nudity

in state parks. The plaintiff sought preliminary and permanent injunctions prohibiting interference with the planned protest and future such events. The district court granted the preliminary injunction, later denied the permanent injunction, and awarded attorney fees to the plaintiff. The Eleventh Circuit affirmed, "reasoning that plaintiff had gained through the preliminary injunction 'the primary relief [she] sought,' i.e., the preliminary order allowed her to present the peace symbol display unimpeded by adverse state action" on the Valentine's Day preceding the Iraq War. *Sole*, 551 U.S. at 81. Justice Ginsburg obtained unanimous support for her opinion in *Sole* by narrowly holding "that a plaintiff who gains a preliminary injunction does not qualify for an award of counsel fees under § 1988(b) if the merits of the case are ultimately decided against her." *Id.* at 86. The Supreme Court declined to address the broader issue of "whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." *Id.* at 86.

The Eighth Circuit, however, has answered that broader question in the affirmative, at least in dicta. Defendants concede that Chief Judge Loken, writing one year before *Sole* was decided, recognized that the grant of a mere preliminary injunction can confer prevailing party status, such as where "it alters the course of a pending administrative proceeding and the party's claim a for [sic] permanent injunction is rendered moot by the impact of the preliminary injunction." *Northern Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1086 (8th Cir. 2006) ("[S]ome preliminary injunctions are sufficiently akin to final relief on the merits to confer prevailing party status."). However, Defendants also note that the Eighth Circuit

"rejected the notion that such preliminary relief confers prevailing party status where it merely maintains the status quo." [Doc. # 52 at 5.]

Essentially, *Northern Cheyenne Tribe* applied the rule from *Buckhannon* "reject[ing] the 'catalyst theory' . . . which permitted a plaintiff to recover fees if the lawsuit achieved the desired result through a voluntary change in the defendant's conduct." *Northern Cheyenne Tribe*, 433 F.3d at 1085. "Instead, the [*Buckhannon*] Court held that, to be a prevailing party entitled to a statutory attorneys' fee award, a party must obtain a *judicially sanctioned* material alteration of the legal relationship of the parties to the lawsuit." *Id.* (citations omitted) (emphasis in original). In *Northern Cheyenne Tribe*, there was no judicially sanctioned material alteration of the parties' legal relationship, so the plaintiffs were not prevailing parties: "In the end, the Tribes achieved their desired result because of a regulatory action" taken by the Department of Housing and Urban Development – determining that the shooting range sought to be enjoined would not generate the necessary public benefits – which led to the denial of funding and the voluntary abandonment of the project. *Id.* at 1086. This regulatory action was never judicially sanctioned.

Here, although the facts of Doe's case are perhaps closer to *Sole*, the determinative issue is similar to that in *Northern Cheyenne Tribe*: "whether th[e] judicially sanctioned [court orders] effected the requisite material alteration in legal relationship to make" Plaintiff Doe the prevailing party. *Id.* at 1085. The narrow holding in *Sole* "that a plaintiff who gains a preliminary injunction does not qualify for an award of counsel fees under § 1988(b) if the merits of the case are ultimately decided against her" does not control this case. *Sole*, 551

7

U.S. at 86. In *Sole*, "as a consequence of the final summary judgment, '[t]he state law whose constitutionality [the plaintiff] attacked [i.e., the Bathing Suit Rule,] remains valid and enforceable today'" against the plaintiff. *Id.* at 82.

Here, Plaintiff Doe achieved more than a mere "transient victory at the threshold of an action"; his initial success in obtaining the TRO before Halloween 2009 was not "undone" when the litigation ran its course. *Id.* at 78. While the motion to dismiss ultimately granted by the Court was that of the Moving Defendants, the reason behind the dismissal was that "Doe's claims are now moot" – hardly a final decision on the merits against him. [Doc. # 39 at 6.] In contrast to the state law at issue in *Sole*, "after *F.R.* and at oral argument on the motion to dismiss, all Defendants confirmed that they will not seek to prosecute or enforce R.S.Mo. § 589.426 as to Doe" after the close of litigation. *Id.* Thus, unlike in *Sole*, where the plaintiff ultimately lost on the merits – or even *Northern Cheyenne Tribes*, where the defendants voluntarily abandoned the project challenged by the plaintiffs – Doe's litigation, like Raynor's, forced a judicial order recognizing § 589.426's inapplicability to him. Doe did not "leave[ ] the courthouse emptyhanded" at the end of litigation. *Sole*, 551 U.S. at 78.

The Supreme Court had earlier referred to "judgments on the merits" as one form of judicial resolution of litigation permitting an award of attorney fees. *Buckhannon*, 532 U.S. at 600. In *Sole*, Justice Ginsburg noted that a district court's foundation for its assessment at the preliminary injunction stage of the probability of the plaintiff's ultimate success on the merits "will be more or less secure depending on the thoroughness of the exploration undertaken by the parties and the court." *Sole*, 551 U.S. at 84. In *Sole*, "the preliminary

8

injunction hearing was necessarily hasty and abbreviated," because it was held "one day after the complaint was filed and one day before the event," imbuing it with a distinctly "tentative character" as it only touched lightly on the merits. *Id.*

Although, under certain circumstances, a "court may issue a temporary restraining order without written or oral notice to the adverse party," here the Court granted Doe's Motion for a Temporary Restraining Order after it was fully briefed by the parties. Fed. R. Civ. P. 65(b)(1). Doe's motion was filed on October 23, 2009, and was fully briefed by October 27. The Court granted the motion on October 30, only after "weigh[ing] Plaintiff's probability of success on the merits, the threat of irreparable harm to Plaintiff absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict upon Defendants, and the public interest." [Doc. # 22 at 2.] The Court reasoned:

> [P]recedent from the Supreme Court of Missouri and other Missouri courts demonstrates a substantial likelihood that the Supreme Court of Missouri will strike down as unconstitutional portions of Section 589.426 relating to individuals convicted prior to its enactment. *See generally Doe v. Phillips*, 194 S.W.3d 833, 849-51 (Mo. 2006); *State of Missouri v. Raynor,* No. 08U1-CR01062 (April 23, 2009) (finding, in the circuit court of Audrain County, Missouri, Section 589.426 unconstitutional under the Missouri Constitution because the statute operates retrospectively). Plaintiff is threatened with irreparable harm through home confinement and separation from his child forced by the threat of prosecution under the statute. Plaintiff has agreed to reveal his identity to Defendants and law enforcement officials as necessary to comply with any order this Court may enter; any potential risk to children is de minimus given that Plaintiff will have been identified and, therefore, law enforcement may otherwise protect against such risk. As to the public interest, "It is always in the public interest to protect constitutional rights." *Phelps-Roper v. Nixon*, 509 F.3d 480, 485 (8th Cir. 2007).

*Id.* at 3. Thus, unlike in *Sole*, this District Court's consideration of the merits pendente lite was neither hasty nor abbreviated, nor were its legal conclusions of a tentative character. Indeed, the Court accurately forecast the "substantial likelihood that the Supreme Court of Missouri will strike down as unconstitutional" the portions of § 589.426 challenged by Doe – i.e., Plaintiff's ultimate success on the merits – unlike in *Sole* where the preliminary injunction "rested on a premise the District Court ultimately rejected." *Id.*; *Sole*, 551 U.S. at 85.

Therefore, by Justice Ginsburg's logic in *Sole*, the granting of the TRO by itself could have been sufficient to confer to Plaintiff Doe prevailing party status, in the absence of a final judgment on the merits against him. However, the Court need not decide this close question because here, in addition to obtaining a mere TRO, Doe also won judicial recognition of his relevant rights at the conclusion of litigation. The Supreme Court has long established that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties . . . ." *Garland*, 489 U.S. at 792-93.

Even though it never reached a final judgment on the merits, the Court twice materially altered Plaintiff Doe's legal relationship to Defendants, by (1) granting Doe a TRO protecting him from prosecution for participating in Halloween in 2009, and (2) recognizing in its May 28, 2010 Order [Doc. # 39] Defendants' concession that they would not seek to prosecute Doe for violating § 589.426 based on his conviction from before August 28, 2008. Doe's second attainment is analogous to the "court-ordered consent decree" mentioned in *Buckhannon* as another form of judicial resolution of litigation

permitting an award of attorney fees. *Buckhannon*, 532 U.S. at 600. Regardless, the Eighth Circuit has interpreted *Buckhannon*'s central holding as a "reject[ion of] the 'catalyst theory'," because "to be a prevailing party entitled to a statutory attorneys' fee award, a party must obtain a *judicially sanctioned* material alteration of the legal relationship of the parties to the lawsuit." *Northern Cheyenne Tribe*, 433 F.3d at 1085 (citations omitted) (emphasis in original). "The issue, then, is whether that judicially sanctioned [relief] effected the requisite material alteration in legal relationship to make the [Plaintiff] prevailing part[y]." *Id*.

Here, after *F.R.* set a new Missouri precedent, the Moving Defendants admitted that they could not win the central issue of Doe's lawsuit against them; they admitted that there was "no basis for distinguishing Doe's case from Raynor's when it comes to application of R.S.Mo. § 589.426, and the statute cannot legally be applied to Doe." [Doc. # 39 at 6.] This judicially sanctioned admission constitutes "a determination of the 'substantial rights of the parties,' which Congress determined was a necessary foundation for departing from the usual rule in this country that each party is to bear the expense of his own attorney." *Northern Cheyenne Tribe*, 433 F.3d at 1086 (quoting *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980)). Such a conclusion is consistent not only with the caselaw, but also the purposes behind the Civil Rights Attorney's Fees Awards Act of 1976: (1) the availability of fees ensures effective access to the judicial process for litigants with meritorious civil rights claims, *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993); and (2) civil rights litigation serves an important public purpose by

11

protecting and clarifying important constitutional rights, *Milton v. Des Moines, Iowa*, 47 F.3d 944, 946 (8th Cir. 1995), *cert. denied*, 516 U.S. 824 (1995).

Plaintiff does not rely on the catalyst theory rejected by *Buckhannon*. Defendants' admission occurred as a direct result of Plaintiff Doe's lawsuit, rather than voluntarily: "Although Defendants would not make such a concession when the Court was considering the temporary restraining order in this case, after *F.R.* and at oral argument on the motion to dismiss, all Defendants confirmed that they will not seek to prosecute or enforce R.S.Mo. § 589.426 as to Doe . . . ." [Doc. # 39 at 6.] Therefore, the relief provided by the Court to Plaintiff Doe did not merely maintain the status quo while real world vicissitudes happened to alter the course of events, as in *Northern Cheyenne Tribe* and *Buckhannon*. Unlike in *Buckhannon*, the Missouri State Legislature did not voluntarily act to eliminate § 589.426. Rather, Plaintiff's legal rights in Missouri changed from (a) the beginning of litigation, when Doe could not legally participate in any Halloween, to (b) the midpoint, when Doe could legally participate only in the Halloween of 2009, to (c) the end of litigation, when Doe could legally participate in all future Halloweens.

In sum, Plaintiff Doe has "point[ed] to a resolution of the dispute which changes the legal relationship between [him]self and the defendant[s]." *Garland*, 489 U.S. at 792 (citations omitted). The judicially sanctioned relief afforded Doe effected the requisite material alteration in legal relationship via (1) a TRO allowing him to participate in the Halloween of 2009; and (2) an order dismissing the case as moot, which recognized Defendants' concession not to prosecute or enforce § 589.426 as to Doe specifically. Doe

"has succeeded on [a] significant claim affording [him] some of the relief sought, either *pendente lite* or at the conclusion of the litigation." *Id.* at 791. Unlike in *Sole*, where the plaintiff "[won] a battle but los[t] the war," here Plaintiff won a battle and then won the war. *Sole*, 551 U.S. at 86. Therefore, Doe is the prevailing party in this litigation.

    **B.    The Amount of Attorney Fees and Costs Owed to Plaintiff**

Defendants Koster and Keathley "do not dispute the reasonableness of the amount of attorney's fees plaintiff seeks . . . ." [Doc. # 52 at 3-4.] That amount is $2,512.50 for 10 hours of legal service. The Court agrees with the parties that this amount is reasonable.

Plaintiff Doe has also submitted a bill of costs [Doc. # 45] totaling $350.

**III.    Conclusion**

Accordingly, it is hereby ORDERED that Plaintiff Doe's Motion for Attorney Fees [Doc. # 46] is GRANTED. The Court awards in favor of Doe and against Defendants $2,512.50 in attorney fees, plus $350 in other costs, for a total of $2,862.50.

                                             s/ NANETTE K. LAUGHREY
                                             NANETTE K. LAUGHREY
                                             United States District Judge

Dated: October 4, 2010
Jefferson City, Missouri